IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


SUZANNA K. NORTHCUTT,

    Plaintiff,

vs.                                    CASE NO. 5:05cv204-RH/WCS

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

_____/


## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

    Plaintiff, Suzanna K. Northcutt, applied for supplemental security income benefits on August 28, 2003.  Plaintiff alleges disability due to pain resulting from an injury to her cervical spine, anxiety, asthma, and kidney problems.  At issue is whether she was disabled on or after August 28, 2003.

Plaintiff was 42 years old at the time of the administrative hearing, had an 8th grade education, and had past relevant work as a waitress, delivery driver, cashier, and convenience store manager.  R. 11.  The Administrative Law Judge found that Plaintiff had the residual functional capacity to do light work with occasional postural activities, occasional overhead reaching, without exposure to dust, fumes, and poor ventilation, limited to jobs requiring specific vocational preparation (SVP)[1] rating of 3 or below.  R. 17.  He concluded that Plaintiff could do a significant number of jobs in the national economy and therefore was not disabled as defined by Social Security law.  *Id.*

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

---

[1] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  *See* SSR 00-4p, available at 2000 WL 1898704.

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**

Plaintiff's primary contention is that the Administrative Law Judge failed to give proper weight to her testimony concerning the degree of pain she experiences. Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity. Social Security Ruling 96-8p, p. 4. Pain and other symptoms may affect either exertional or non-exertional capacity, or both. *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. See *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. See *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. See *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). It is not necessary that the ALJ expressly identify this circuit's pain standard if his findings "leave no doubt as to the appropriate result" under the law. Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

"A claimant's subjective testimony supported by medical evidence that satisfies the pain standards is itself sufficient to support a finding of disability. Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted). "[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Id.*, at 1562, *quoting* Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).

Plaintiff testified at the hearing that after she had neck surgery, she still hurt a lot. R. 28. She said that the pain radiated into both shoulders. *Id.* She said she hurt on a "regular basis." R. 29. She took over-the-counter pain medications, Tylenol and Ibuprofen. *Id.* She was wearing wrist splints at the hearing because she said she had carpal tunnel syndrome. R. 29-30. She had not seen the orthopedic physician for her carpal tunnel syndrome for "a couple of years," however. R. 30.

Plaintiff said that she cannot do any prolonged standing, stooping, or bending, cannot reach above shoulder height, and cannot lift more than 20 pounds. R. 24. She said her neck and lower back hurt if she stood for very long, and thought that she can stand for about an hour before having to sit down or change positions. *Id.* She said that the time she could remain seated depended upon the chair, but on a straight chair, she felt that she could sit for only 30 minutes. R. 25.

Plaintiff said that during a typical day at home, she watched television, sat on her porch, cooked, cleaned, and shopped, but needed help loading and unloading. R. 25-26. She said that she can do these activities for about ten minutes and then must take a break. R. 31. She said that it "takes me the whole day to get a little sweeping and vacuuming done." *Id.* She drove herself to the hearing, a period of 45 minutes. R. 26.

The Administrative Law Judge determined that Plaintiff had degenerative disc disease and that this was a severe impairment at step 2. R. 12. The ALJ further found that:

> The claimant has a history of cervical disc herniation, which was repaired with corrective surgery in 1998. The claimant was cleared to go back to work. The claimant was also involved in two motor vehicle accidents, resulting in lumbar and dorsal sprain. She complains of continuing neck and shoulder pain (Exhibit 7F, 8F). Upon consultative examination,

> status-post neck surgery, there is no evidence of any significant joint or spinal dysfunction, with mostly normal range of motion except minimal C-spine limitation of flexion and extension.  She was able to walk, sit, stand, climb up and down from the examination table without difficulty, no motor sensory deficit, normal straight leg raising and deep tendon reflexes, and normal trip strength and fine manipulation.  She stated she could not afford to continue with physical therapy (Exhibit 20F).  There was no indication that the claimant could not ambulate effectively.

R. 12-13.  The ALJ further concluded that Plaintiff "has underlying medically determinable impairments that could reasonably be expected to result in some of the symptoms as alleged," but he also found that the "record fails to provide any objective medical evidence that the claimant's impairments are as severe as her hearing testimony indicates."  R. 14-15.  He reasoned that she had not had any

> hospitalizations, significant active treatment or significant office care other than for limited routine maintenance, and there have been no significant increases or changes in prescribed medications reflective of an uncontrolled condition.

R. 15.  He noted only conservative treatment, and felt that Plaintiff's activities of daily living were "inconsistent with the level of work related impairment alleged."  *Id*.  He concluded that Plaintiff had limitations and her physical activities were reduced by pain, "but this does not preclude all work."  *Id*.

Plaintiff argues that she has a medically determinable impairment, that is, the impairment that resulted in cervical spine surgery on April 14, 1998.  Doc. 21, pp. 11-12.  Plaintiff notes that after this surgery she had two motor vehicle accidents.  *Id*., p. 12.  Finally, Plaintiff notes that she frequently visited the Gulf Coast Walk In Clinic and Bay Medical "due to her chronic neck, shoulder, and back pain," and none of the treating doctors indicated that her pain was not credible.  *Id*.

These arguments point to little evidence in the record of either objective medical evidence confirming the severity of the alleged pain or an objectively determined medical condition that can reasonably be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d at 1225. Two motor vehicle accidents describe events that might or might not have caused further injury, but events are not medical evidence. Frequent trips for treatment may give credence to pain testimony, but only if the treating physicians noted objectively determined medical conditions during these visits.

The medical record does not contain significant objective findings to support Plaintiff's pain testimony. On April 10, 1998, a "moderately large herniated disc" was seen on the left C6-7 by MRI. R. 140, 143. On April 14, 1998, Plaintiff underwent a cervical discectomy and fusion at C6-7. R. 144. By September 16, 1998, she had been released "back to duty" by her surgeon, Dr. Springer. R. 147.

Plaintiff was examined on April 25, 2001, by G. Tracy, M.D. R. 157. Dr. Tracy found that Plaintiff had "some tenderness to palpation about the right triceps area," but she had complete abduction and adduction of the right shoulder, normal flexion, and normal extension of the right elbow. Id. Dr. Tracy also found "some tenderness to palpation about the inferior LS area paraspinous musculature," with slight tenderness with flexion and extension of the lumbar spine. Id. The lower extremities and gait were normal. Id. The diagnosis was "contusion, right arm" (from falling out of the bed the night before) and "mild lumbosacral strain." Id.

Plaintiff went to the Gulf Coast Walk In Clinic for treatment on May 21, 2003, and said she was in pain from her neck to her tail bone. R. 103. Tylenol 4 was prescribed

for pain.  *Id*.  Xanax was also prescribed, but that was for anxiety.[2]  *Id*.  On May 31, 2001, she returned, having fallen and hurt her hip.  R. 102.  She said the Tylenol was not helping.  *Id*.  Percocet[3] was prescribed.  *Id*.

On July 9, 2001, Plaintiff was in a motor vehicle accident.  R. 160.  She went to the Bay Medical Center emergency room.  *Id*.  She said that she skidded into another vehicle, but not much vehicular damage was caused.  *Id*.  Mild neck pain was reported, increasing with pain over the hips.  *Id*.  On examination, diffuse tenderness of the neck was noted.  R. 161.  Her gait was normal and she had full range of motion of her hips.  *Id*.  An x-ray of Plaintiff's cervical spine was ordered, but the results, if any, have not been mentioned by either party.  *Id*.

Plaintiff returned to the Bay Medical Center emergency room on July 30, 2001.  R. 162.  Plaintiff reported she was still having some intermittent back pain, with spasms.  *Id*.  On examination, Plaintiff's neck was not tender and she had full range of motion without discomfort.  *Id*.  Her spine was in good alignment without swelling, and she was "nontender over the vertebral process."  *Id*.  Slight paraspinal spasm was noted in the upper lumbar area, but she had full range of motion with minimal discomfort.  *Id*.  Plaintiff had full strength bilaterally in upper and lower extremities, and her neurological examination was normal.  R. 163.

---

[2] Xanax is prescribed for management of anxiety disorder.  PHYSICIANS' DESK REFERENCE (2005).

[3] Percocet contains oxycodone and acetaminophen.  Oxycodone is an opioid similar to morphine, and also similar to codeine and methadone.  PHYSICIANS' DESK REFERENCE (2005).

Plaintiff was treated at the Gulf Coast Walk In Clinic from July, 2001, to February, 2003.  On July 26, 2001, there is no note of back or neck pain.  R. 99.  She reported neck and back pain on August 8, 2001, and her neck was found to be tender.  R. 98.  On October 1, 2001, she was seen for a cold, but no complaints of back pain are noted.  R. 96.  Her neck was found to be tender on October 15, 2001.  R. 95.  It was reported on October 17, 2001, that Plaintiff had to do community service for a DUI but could not due to neck and back pain.  R. 94.  It was reported that she fell on October 22, 2001, but only an abrasion is noted.  R. 93.  On November 13, 2001, Plaintiff complained of neck and shoulder pain, and her neck and shoulders were found to be tender.  R. 92.  She again complained of neck, shoulder, and lower back pain on December 3, 2001.  R. 91.  She said she was swollen from head to foot, and that nothing helped her pain on December 10, 2001.  R. 90.  She said she "lives with pain" on March 1, 2002, but no objective findings of pain are noted.  R. 88.  On March 12, 2002, after another fall, Plaintiff's back was tender.  R. 87.  On April 26, 2002, her neck and left shoulder were found on examination to be tender, and there was a "slight tenderness across the L5 spine."  R. 85.  This is one of the few times that a diagnosis of "back pain" was circled.  *Id.*  A diagnosis of back pain was again circled on August 26, 2002, and bilateral carpal tunnel syndrome was also diagnosed.  R. 83.  Her back was found to be "tender."  *Id.*  Back pain was again noted on October 3, 2002.  R. 80.  Finally, on February 3, 2003, tenderness of the neck and discomfort of the back were noted.  R. 79.

On May 5, 2003, Plaintiff was seen by Dr. Healey complaining of sudden onset of left back pain radiating into the left upper quadrant.  R. 51.  The pain was caused by a kidney stone, which was treated.  *Id.* and R. 48, 46.

Plaintiff's application for benefits was filed on August 28, 2003. On October 27, 2003, she was examined by Iqbal A. Faruqui, M.D., on a consultative basis. R. 173-176. Plaintiff told Dr. Faruqui that her physician had told her "to have only light duty," but no one will hire her with those restrictions and she said that "she is in a lot of pain in her neck and left arm." R. 175. By examination, Dr. Faruqui found no spinal column tenderness or paraspinal muscle spasm. *Id*. Plaintiff had full range of motion in all body joints "except neck flexion, which is 40 degrees and neck extension is about 35 degrees." *Id*. Dr. Faruqui noted that Plaintiff's gait was normal, and she "was able to walk, sit, stand, climb up to and get down from the examination table without difficulty." *Id*. He found no motor or sensory deficit, and Plaintiff's grip strength and fine manipulation were normal. *Id*. He concluded that Plaintiff "does not seem to have any distress and seems to have [range of motion] mostly normal except c-spine." *Id*.

Thus, the Administrative Law Judge's determination that Plaintiff's pain testimony was not credible to the degree alleged is supported by substantial evidence in the record. Objective medical evidence confirming the severity of the alleged pain is lacking in the medical record reviewed above, and there is no objectively determined medical condition that can reasonably be expected to give rise to the claimed pain. Plaintiff used only over the counter pain medication. R. 29. Plaintiff was able to receive medical treatment and medication at the Community Health Center in late 2003, 2004 and 2005. R. 234-243. Thus, she was not precluded from obtaining treatment due to lack of ability to pay. Plaintiff did not have any treatment for her neck injury after she filed for SSI in August, 2003. While treated at the Community Health Center, she did not complain of severe neck or back pain. R. 234-237. She reported at one time that her treating

physician thought she was capable of light work. Finally, the consultative examination by Dr. Faruqui is substantial evidence in the record to support the ALJ's credibility findings.

Plaintiff's second contention in this case is that the ALJ failed to rely upon the vocational expert's testimony in making his decision. Doc. 21, p. 13. This is unpersuasive. The ALJ found that Plaintiff had the residual functional capacity to do light work with occasional postural activities, occasional overhead reaching, without exposure to dust, fumes, and poor ventilation, limited to jobs requiring specific vocational preparation (SVP)[4] rating of 3 or below. R. 17. He then asked the vocational expert whether there were any jobs in the national economy a person could do, assuming those restrictions. R. 32. The vocational expert said that a person with only those limitations could still do Plaintiff's past relevant work as a waitress and deliverer, both of which are SVP 3 jobs. R. 31-33. The ALJ then added a restriction of sedentary work, and the vocational expert said that while that would rule out the waitress and deliverer jobs, Plaintiff still could do work as a telemarketer, accounts adjustable clerk, COD clerk, and as a directory assistance operator. R. 33-35. The ALJ relied upon this testimony to find Plaintiff not disabled.

The ALJ also asked the vocational expert to assume hypothetically a person with the above residual functional capacity, but would either be absent from work 20% of the

---

[4] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *See* SSR 00-4p, available at 2000 WL 1898704.

time due to pain flare-ups, or would lose 20% of her productive time due to pain flare-ups. R. 35. Those limitations are not within the functional limitations found by the ALJ for Plaintiff, however. If it is Plaintiff's argument that the ALJ erred in not finding such limitations, the contention must be rejected. The ALJ's residual functional capacity determination, without such limitations, is supported by substantial evidence in the record.

**Conclusion**

Thus, considering the record as a whole, the findings of the Administrative Law Judge are based upon substantial evidence in the record, and those findings were sufficient to discount Plaintiff's pain testimony. Accordingly, the decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 4, 2006.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**